Lambrose on behalf of Mr. Robinson. This case should be reversed and remanded with instructions that the RIT direct the Nevada State Courts to give Mr. Robinson a new sentencing because the district court, the trial court, during Mr. Robinson's sentencing proceeding refused to give him an attorney to represent him at sentencing, a critical stage of the proceedings under Memphis v. Ray, and based that refusal on the fact that in the trial court's opinion, his invocation of his rights under Ferretta at trial was essentially cast in stone and could not be repudiated or vitiated. No matter which standard we apply, whether we apply the less deferential ADPA standard, which I do not think applies in this case because there was never a merits review by the Nevada Supreme Court, and the only merit review that ever was undertaken was by the post-conviction judge, Judge Handelsman, and by the trial judge. And as I said before, the trial judge predicated his decision on a rule that is absolutely contrary to both Ferretta, McCaskill v. Wiggins, and of course Memphis v. Ray. It's really that simple. Now, I know the court has directed the parties to address themselves to the questions with regard to whether the Vang case has any application to the default that the Nevada Supreme Court imposed in Mr. Robinson's post-conviction relief petition. It does not for three reasons. And I'm very familiar with Mr. Vang's case. Our office represented Mr. Vang, and I talked at length with Mr. Powell, who was counsel for Mr. Vang, about the case. The three reasons are pretty simple. The first reason is Vang does not apply because in Mr. Robinson's case the rule was never broken. 810 was never broken for a couple of reasons. And the first is that the district attorney, during the proceedings in post-conviction, stipulated on the record that was entered into an order that he would allow Mr. Robinson to present three issues and that the district attorney would not pursue any procedural defenses. And that's in the record. I would just invite the court to, and I'm sorry I didn't put this in my excerpts of record. I should have. I didn't anticipate that this was going to be an issue. If you look at Exhibit 141 to my amended petition, that's a hearing at which the district attorney proffered his stipulation. Relevant pages are 33 through 48. The district judge told Mr. Robinson, who was proceeding pro se during those proceedings, with standby post-conviction counsel, that the stipulation means the district attorney can't file any more motions to dismiss in exchange for Mr. Robinson's agreeing to proceed on just three post-conviction issues. Vindictiveness of the prosecution, the critical stage argument that I'm talking about, which was round 10 in the amended petition, and the ineffective assistance of standby counsel. That was, as I said, consecrated in a stipulation, an order of stipulation, I think is what it was called, prepared by the district attorney. The district attorney implored the court at that hearing, let me file an answer. Please let me file an answer, because I will file my answer and then we can get this hearing heard on the merits. If you look at the answer, the answer's in the record at Exhibit 91. It was filed about three days after the hearing. It's three pages long. There isn't a procedural defense in there, period, end of discussion. The stipulation was entered and filed four days later. Now, at the evidentiary hearing, the district attorney does a complete pirouette that Judge Handelsman, the post-conviction judge, basically rejected. The district attorney then does a lame 34810 objection, an oral objection. And the reason I call it lame is because four days earlier, maybe seven days earlier, ten days earlier, he had agreed on the record that he wasn't going to do just what he did. And I think, you know, Judge Handelsman didn't come out and ask him what exactly he thought he was doing. Mr. Robinson did. Mr. Robinson basically said, I thought we had this all figured out. You know, I thought we were going to hear this thing on the merits. The district judge at page 21, and that's not in my excerpts, I apologize, but it says Exhibit 92. Excuse me, I'm sorry, Exhibit 142, the evidentiary hearing transcript. At page 21, the district judge denies the state's oral motion under 34810 and says, let's get this hearing on. So what do we have? We have a situation in which we had an evidentiary hearing. 810's state cause and prejudice analysis, in other words, what happened in Vang, the use it or bring it or waive it rule, bring it on direct appeal or you waive it, you can't bring it in post-conviction, was never discussed. Why wasn't it discussed? Because it didn't have to be discussed. It was stipulated by the parties that we were going to hear the claim on the merits. So this wasn't an 810 violation. And I have to say, with all due respect to the Nevada Supreme Court, why they pulled this out and decided to default with no briefing by any of the parties, no argument in their order-dismissing appeal, they did like a one paragraph, oh, sorry, your sentence, your critical stage issue is defaulted under 810, and they don't even talk about state cause and prejudice, at least in Vang. And I brought the Vang order-dismissing appeal with me, the Nevada Supreme Court's order-dismissing appeal. At least in Vang, they said, appellant has failed to demonstrate good cause and prejudice. They were talking about state cause and prejudice under 810 because, you know, there's a state mechanism to get over that hurdle. We're not going to hear it. Well, Mr. Robinson had no motive whatsoever, no reason. In fact, he was sucker-punched into agreeing not to present his cause and prejudice. The truly anomalous procedural aspect of this case is that he could have probably done it because his direct appeal was still pending when they did the post-conviction evidentiary hearing. He could have probably done it, but he didn't. Because why? Because he relied to his, hopefully not his detriment. I mean, you know, and so that's the second reason why Vang doesn't apply. The third reason is if you look at Judge Hagan's decision, Judge Hagan ruled that, no, this claim, this Ground 10 claim is not waived if you don't bring it on direct appeal because under these circumstances, the Nevada Supreme Court has said in Pellegrini, if it's the type of claim that can only be brought collaterally, and believe me, the parties during the state post-conviction litigation sure thought it was. We had stipulations. We had witnesses. We had evidence. Judge Adams, the sentencing judge, testified. There was evidence about whether he got a letter. I mean, that was a whole lot of controverted evidence. In fact, the district attorney at one point during his closing argument in front of post-conviction judge says, yeah, you know, this letter is in dispute. Well, Judge Hagan acknowledged all of that, and he said, you know, 810 can't apply because I'm deciding this. I'm looking at the record as a whole, and I have to look at the post-conviction record. And if I look at the post-conviction record, then Pellegrini, where the Nevada Supreme Court said, you know, these types of claims can be brought in post-conviction, says that it's not defaulted. So Vang, one, two, three, Vang does not apply. Quite frankly, and I want to reserve one minute. I notice I have one minute and 30 seconds here. So really, I guess that brings us into the other question that this Court asked, and that was, does AEDPA apply? And if it does, was this violation contrary to an unreasonable application of? Well, if it does apply, it applies in a very watered-down fashion after, you know, this Court's series of decisions ending in Nolth v. Cook, 333, Fed 3rd, 1052, Pertle v. Morgan, 313, Fed 3rd, 1160, where the highest state court doesn't review on the merits. A lot less deference, if any, is given to the state courts, and this Court can conduct a complete de novo review of the record and come to its own conclusions without giving the state any deference. It's not contrary to because no state court ever cited the right law. What it is, I guess, it must be an unreasonable application of, again, Memphis v. Ray, the critical stage case. Feretta, which says that, you know, Feretta and McCaskill. McCaskill says, you know, once you invoke Feretta, you can waive Feretta. McCaskill does say that, and that's at 465 U.S. at page 182. A defendant can waive his Feretta rights. So, you know, the state court said, you never can. Once you waive, you're done. Don't talk to me anymore. Okay. Thank you. Thank you. Counsel for the State, Mr. Warwick. Good morning. May it please the Court. I'm Deputy Attorney General John Warwick, representing the respondent appellees in this matter. The threshold question as to whether or not procedural defaults apply in this case is the first issue that needs to be addressed, and I do believe that it does apply in this case. The Nevada Supreme Court, in applying 34.810, the application of that particular procedural default, and that it should have been brought upon direct appeal, is wound up in, yes, it's an ineffective assistance of counsel claim. However, it was a denial of a motion for appointment of counsel, and I think that's what the Nevada Supreme Court was looking at, less as an ineffective assistance of counsel claim and more as a due process violation, and that would have been something that should have been brought on direct appeal. Do we know whether this default rule, procedural default rule, if it applies, has been consistently applied by the Nevada courts? In looking at the language from Vang, this Court has upheld 34.1801B2. That was a different period of time. The test is, was it applied at that time? And I'm just asking you, sort of skipping over an issue here, assuming that this rule applies, do we know, can we tell from the record of this case whether it's been consistently applied or was during this period of time? The answer is no, isn't it? I would agree with Your Honor in that matter. This rule may not make all the sense in the world, but apparently it requires either a district judge or a magistrate judge to sit down with every reported decision from the State appellate courts, intermediate and supreme, and put in stacks where it's been applied and where it hasn't, and that hasn't occurred in this case, right? That would be correct, Your Honor. Let's go back to the rule itself. You've heard your opponent's argument that the State stipulated this away. What's your response to that? The stipulation, I think, would go more towards the argument of the ineffective assistance of counsel, less on whether or not the motion itself had been denied and should have been brought upon direct appeal. Was there any determination when this was up until the point of the district court that that stipulation did not apply to the claim being brought here? Has that ever been resolved? I would have to refer to the record, Your Honor. You don't know? Correct. Assuming that procedural default does not apply in this case, and looking at the merits, this is a case where there is not an unreasonable application of clearly established federal law. And looking at McCaskill v. Wiggins, 465 U.S. 168, a defendant is not entitled to choreograph special appearances by counsel. We have here Mr. Robbins, who is a sophisticated criminal defendant. He knows he's facing habitual criminal finding, perhaps. He's been through the system, and what he does is he begins by saying, well, I'd like counsel, and I'm not going to have counsel. And then on the day of sentencing, Judge Adams is somewhat surprised at this point that Mr. Robbins is asking for counsel because Mr. Robbins goes through part of the hearing and there's really no objection until partway through the hearing. I think it's important to refer to the record in that instance to see the exact give and take that's going on between the court and Mr. Robbins about his objections to prior convictions, et cetera. And the idea that the judge had early notice, well, that's something that was really in dispute. And the State District Court ---- What was in dispute? Whether or not Judge Adams had received a letter from ---- Well, does it really matter whether he received it or whether it was sent? I mean, the defendant has no control over whether the judge is actually going to get it. I presume he's incarcerated at that time. And the Nevada Court of Appeals appeared to accept the fact that he sent the letter sometime in advance. Right. And even assuming that the court had received it, the court would have discretion to decide on the day of sentencing that, no, Mr. Robinson, you don't get to change your mind today. We're just going to go ahead and continue the sentencing. Why do you say it's unfettered discretion? It's not unfettered. Let's accept the fact that the proposition that the letter had been sent a week in advance. Now, granted, I also accept the proposition the judge may not have received it. That's something the defendant can't control. If he made his request a week in advance and it was known the judge had received it, do you think the judge would have the discretion to say, no, I'm not going to let you change your mind about counsel? On that particular set of facts, the court's discretion, I think, would be greatly reduced. Well, then from the defendant's perspective, if he can't control the delivery of the letter because he's incarcerated, why is it he should be punished because something happens within the jail or public mail system to keep the letter from being delivered on a timely basis? That's assuming that the letter had been received. I think there's reference to the fact that that letter was never properly file stamped the way other letters were. No, I understand there is a good basis for believing the letter might not have been received, and apparently the judge, by the time this came up sometime later, didn't have in a recollection one way or the other but does not recall receiving it. It may well have been that something went astray. But, again, from the perspective of the defendant, if he made a timely request for counsel in advance of the hearing, I'm not sure that it's necessarily his fault or should rebound to his detriment if the judge just didn't find out about it. And as the hearing unfolds, he doesn't discover the request until halfway into the hearing. I understand the judge's reaction then, but from the defendant's perspective in asserting a right to counsel, should it hurt him that somehow the mail system failed? I think it's interesting when you look at the transcript of the sentencing hearing that there doesn't seem to be a great deal of surprise in Mr. Robinson's part in the early part of the hearing. It's like later on when perhaps things aren't going quite so well that that's when the comments of Mr. Robinson come more to the judge's attention. Are there any further questions? I don't see any. Thank you for your argument. We'll hear a minute of rebuttal. Thank you. I just wanted to make sure that the record is absolutely clear that the stipulation that was entered into by the district attorney during the post-conviction proceedings absolutely included this critical stage issue. Absolutely. And like I said, it's in the record. I take it you have a copy with you, don't you? Yeah, I have a copy with me. Why don't you leave it with the clerk, if you don't mind, and give a copy to other counsels. Okay. Great. Thank you. The other thing, just to absolutely clarify another point, if you look at excerpts of record pages 107 and 108, the sentencing judge, Judge Adams, he based his decision on his original canvas, his original threat of canvas. I note at the time Mr. Robinson decided to represent himself, I have canvassed at great length, discussed the charge, the potential elements, the consequences, et cetera. Based upon the extensive canvas of the court, and contrary to my suggestions to Mr. Robinson, he elected to represent himself in this proceeding, and therefore, based on all those circumstances, the request for continuance in counsel is denied. It had nothing to do with timeliness or anything else, and that's why even if there is a timeliness component in this constitutional analysis, the state courts never took that into consideration. Now, Judge Hagan might have, which, again, goes to my procedural why this isn't Vang. Judge Hagan did it because he was looking at the post-conviction proceedings, not what could have been and should have been raised on direct appeal, and the Nevada Supreme Court itself clarified that. Now, there was one other question, I think, with regard to Judge Hawkins asked if this rule is consistently applied. Well, Valerio says it's not in capital cases. Vang says it is in non-capital cases. And then if you look at Pellegrini, this is the beautiful thing, the Nevada Supreme Court says it's consistently applied in both capital and non-capital cases. So if that's the case, then, with all due respect, I guess this Court got it wrong in Valerio and got it wrong in Vang, because if Valerio's right and it's an en banc panel decision, it's inconsistently implied in capital cases, and the Nevada Supreme Court is saying we consistently apply it in all cases, then Vang is wrong. Okay. Just a little food for thought. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted and will proceed to the next case on the calendar, which is Wallace against Ignacio. I guess you don't move. Okay.
judges: Hawins, Thomas, Clifton